The first case we'll hear today is Sanchez v. Sessions and Mr. Cawley, I'll hear from you. Thank you, Your Honor. May it please the Court, P. Mercer Cawley. I'm here as counsel for the petitioner, Mr. Sanchez. And we're here today petitioning this Court to review a motion to reopen the case that was denied by the Immigration Judge on Board of Immigration Appeals. And I am requesting four minutes of rebuttal. Currently, this case is in a position where the Department of Homeland Security is attempting to remove Mr. Sanchez from the United States, permanently barring him from the United States and potentially separating from his U.S. citizen spouse and U.S. citizen children, all for an alleged act that occurred back in 2007 for which he has testified under credible testimony that he did not register to vote. Once the Immigration Judge heard everything, in my opinion, the Immigration Judge then implied a strict liability application to this particular case, finding that he had falsely claimed to be a U.S. citizen when his signature was on the card. Mr. Sanchez has consistently said that he did not have knowledge of this, and we have provided new evidence in the motion to reopen that goes to this, in 2007, as to whether he actually had knowledge of this case and had knowledge of the fact that he had filed for election. Well, what are you saying, then, that he signed it by accident? Under testimony, he says he doesn't know how. He claims, I did not register to vote. I never knew I registered to vote. This is the first I'm ever hearing about it. And the Immigration Judge found him to be a credible witness when he made these statements. When asked, is that your signature, he looked at it and said, it looks like my signature. This occurred at the DMV, according to the evidence at the Department of Homeland Security. They took the parks in New Jersey, too, which is where he had been living. To me, that contributes significantly to the absence of an accident. Sure. In keeping in mind, a lot of these cases are coming for I-9s, and the purpose of the I-9 is to get a job. In this particular case, he was going to the DMV. He was going to get a driver's license. It had nothing to do with registering to vote. I understand, but the document he signed, regardless of its purpose, is clearly asserting that, under oath, that he was a citizen of the United States. And clearly asserted that he was born in New Jersey. Sure, and And it looks like, clearly, his very unique signature there. Now, he doesn't recall it because it's probably a while back, but he never said he didn't sign it, and the evidence is overwhelming. And there was a finding of fact. You're not reviewing that evidence. In other words, there was a finding that he did sign it and misrepresent his citizenship. There is absolutely a finding, and under his testimony, he says, it does look like my signature. Well, except we don't need to re-litigate that. In other words, that is a finding that was made and is in the record, and that's unreviewable. Sure, and what we're discussing, what we're bringing up is the evidence itself. We have new evidence that goes to his mindset in 2007. Explain that. It seems to me he puts together on his own two things that he doesn't link to that at all. Sure. Well, first is with the voter registration card is that it was typewritten at the DMV. So he did not hand fill out this card. This was filled out. It was printed out at the DMV. Which card? The voter registration card, which is in the exhibits between 58 and 63. He looked at it carefully, but he did have to fill in, he had to check the box, he had to sign it, and he had to put the state where he was born. Where were you born? And he puts New Jersey. Now, that's an affirmative. That has to be created, and that happens to be where he did live before he went to North Carolina. It absolutely was where he did live beforehand, and he acknowledges that. But that evidence we're not reviewing. But what we're looking at is his, what was the intent? Did he have mens rea back in 2007? And you don't. This is not a criminal case, but we are looking at the plain language of the statute, in my opinion. What is the knowledge requirement under the statute? Well, we're maintaining that the plain language is that there has to be knowledge. If you look at. . . Okay, what part of little 2i talks about knowledge? Yes, anyone who falsely represents or is falsely represented in order for any purpose or benefit under this act. And in this particular case, the Fourth Circuit has looked at de Cura, and although knowledge was not necessarily needed because in de Cura, he absolutely admitted that he had signed the I-9 knowing that he was not a U.S. citizen. There was an analysis about the benefit, and the benefit was you don't actually have to obtain the benefit, but what you have to look at, is there a purpose? Did you do this for a reason to achieve this benefit? And that would imply willfulness, and that would also imply some type of knowledge, that you don't just mistakenly do something that you are falsely claiming to be and falsely misrepresenting. So are you saying he mistakenly did it, that he negligently did it, that he recklessly did it? What does the record show that he is saying? We're saying that he did not have any knowledge of even doing it. The first time that he was confronted was when he was on the stand. Was he an illegal alien when he signed that? At that particular time, he was married to a U.S. citizen. Was he an illegal alien? He had overstayed his visa, yes, sir. Okay, so he's clearly trying to cover up the fact. If he disclosed the fact that he was not a United States citizen at that point in time, then he risked exposing himself and having himself deported. It seems to me if you're looking for a benefit, it's pretty clear that when he signs something that says, I am a U.S. citizen, I was born in New Jersey, and he signs his name, and the court finds as a fact that he signed it. It seems to me that ends that. Now, the only question is whether this evidence you've put in later changes that conclusion. Sure. I don't think it even relates to it. And that's where we're getting to, because if you look at the immigration judge, when the immigration judge gave his opinion, in my opinion, he applied a strict liability. It doesn't matter. Is it true that in 2007 in North Carolina, an undocumented person could not obtain a driver's license? At that time in North Carolina, from my understanding, someone who had a passport would be able to obtain a driver's license. Wait, wait, wait. I think you answered a question that I didn't ask. I'm not asking about passport. Sure. I ask, is it true that in 2007, this all happened in 2007. Sure, this happened in 2007. In North Carolina. I mean, in some states, undocumented persons get a driver's license. Sure. And most of us think that makes a lot of sense. Right. You don't want people driving without insurance and without proper testing and so forth. My question is, in North Carolina in 2007, could an undocumented person nevertheless, despite the lack of documentation, obtain a driver's license? In my understanding, they could with a valid passport. So a passport from Mexico would be sufficient to get you a driver's license in North Carolina? That is my understanding. That is not true today. He didn't have that, did he? Not from Mexico. It was from Brazil. I mean Brazil. I meant to say Brazil. Yeah. But then Judge Davis's question is a legitimate one. The benefit is to get a driver's license, and he could not have gotten the driver's license had he checked the other licenses. Well, first of all, there's no requirement that you register to vote for DMV. I think this is exactly the opposite of what Judge DeMarcus said. I thought you said to me just now that if he had a passport from Brazil, whether or not he was in the United States with permission, he could get a driver's license in the state of North Carolina. That is my understanding, yes, Your Honor. So he didn't have to claim U.S. citizenship in order to get a driver's license. And he didn't even have to register to vote in order to get a driver's license. Well, he could have registered to vote. So the whole registration to vote is something that happens after this process is in process. So there is no requirement. As I understand it, your argument, the scenario you want us to embrace and you wanted the IJ to embrace, but he didn't, is that this was sort of – by the way, is there a language issue here? At this time, no. In 2007, there was. So in 2007, there was a language issue? Yes, he entered in 2005, lived in a community that only spoke Portuguese for two years. So the scenario you're painting for us, or you're trying to paint for us, is that this was, shall we say, typical DMV time. I mean, I was just there last week, so I sort of have it fresh in my memory. Lots of papers, lots of sort of odd things going on, things pushed at him. He signs, this is a computer-generated document. And it's really weird because the form says, are you a U.S. citizen? And somebody checked yes. Yes. Looks like a computer checked yes. And then the next question is, are you over 18? And somebody answered no. Right. So who filled that out? It makes you wonder why North Carolina would ask somebody if they're over 18 on a voter registration form application. Yes. Because if the answer is no, that should be the end of the process, right? I completely agree. And as far as who filled it out, he does not remember. He just knows that he did not fill out anything. Okay, but who put these X's in the boxes? It's computer-generated. What does that mean?  Does that mean he typed it in or someone else typed it in? He doesn't remember doing anything. He was completely surprised. But does the record show when he typed it in or someone else typed it in and he gave them verbal answers? The record does not show that he typed anything in or gave verbal answers for this. Okay. Well, he said that the form says he would be 18 years, he will not be 18 years of age on or before Election Day, okay? Yes. But then right above his signature, he says, I will be 18 years of age by the date of the next general election. So there's a total internal contradiction in the document. What evidence is there in the record of his language issue and his inability to read and write English at the time? At the time, in the administrative record, there is not. You have to go back to the initial. When did he come to the United States? He came to the United States in 2005. And then he lived in New Jersey for two years in a Brazilian community, so everything they spoke at that time was Portuguese. We don't know what proof of identity he used, do we? We do not. That really hurts your case. We do not know what he used. It happened so long ago, in 2007, he doesn't remember. He had to prove his identity to get a driver's license. Exactly. And we have no idea how he did that. And the reason we bring that up, the only thing he would have had would have been a New Jersey driver's license or his birth certificate. But I do not know which one. He had a New Jersey driver's license? It's my understanding that he had a New Jersey driver's license. Is that in the record? That's not in the administrative record. Yeah, I didn't see it. It's not in the administrative record. But he moved to North Carolina in 2007 and then applied for his driver's license. And you're saying there's nothing in the record regarding his knowledge of English? No, ma'am. Not in the administrative record. There is not. Now, with regard to the IJ's opinion, what do you make of the fact that the IJ, at page 72 of the appendix, says that he and his wife testified credibly but then finds it implausible that he could not recall signing the voter registration form and then says, nevertheless, the court finds that he and his wife testified credibly and credits their testimony? What's going on there? Absolutely. That is one thing that we believe is crucial to this case. If you look at Matter of Takura, IOKA, all these other cases that have been decided that are I-9 cases, Matter of Bets, every single one was the person was found not to be credible, and there was evidence that was blatant that the person knew absolutely that they were claiming to be a U.S. citizen. In this particular case, he was found to be credible, and the Board of Immigration Appeals actually says he testified, I did not register to vote. Okay. How do you reconcile the IJ's statement, I'm just interested in your take on it, with the fact he testified credibly but then found it implausible that he couldn't recall signing the form, but nonetheless, I will credit their testimony, the testimony of him and his wife. What does that all mean, taken together? What should we take from it? Sure. In my opinion, that he was found to be a credible witness, but that the immigration judge applied a rule of strict liability. That looks like your signature, it's on a voter registration card, so therefore I'm finding that you falsely claimed to be a U.S. citizen. I think you have to go back to what was the intent, because the word falsely is an adverb representing a very active verb. Of course, the alternative interpretation is when he says I find him credible, he really meant mostly credible. And there's this one part that I don't think is credible. In fact, isn't that the upshot of the ruling on the motion to reopen? Exactly, and that's why I feel that the evidence is material. Well, but here's my problem that maybe you can address. If we were ruling your favor and send it back, what's going to be different? Because, in fact, hasn't the agency actually de facto granted your motion for reconsideration and denied it on the merits? Well, I think what would be different is if it's sent back and there's instruction not to apply strict liability, not to say that looks like your signature, but actually go and say did you have knowledge in 2007? So you want a specific finding, I don't believe him when he says he didn't know he was claiming U.S. citizenship. Sure, because at this time his testimony was found credible, and the new evidence goes exactly to what his intent was at that time. Are you prepared to say the record doesn't support that finding? If we were to send it back? The record supports that it looks like his signature, and he even acknowledges it looks like my signature. Yeah, but on the question of his knowledge, are you prepared to argue that the record does not support a finding that he knew? In my opinion, in the motion to reopen, that issue wasn't even looked at. It was not even addressed. Well, it wasn't addressed explicitly, and that's why I'm asking you, if we send it back for an explicit finding, are you prepared today to argue that such a finding would be so against the weight of the evidence that it would be an error as a matter of law? In my opinion, after working with this client, yes, I do not believe he had knowledge back in 2007 that he signed this. How, though, do we get in our written document, remanding it, how do we get around the very differential standard of review here? In other words, just tell me, you be the judge, and tell me how you're going to write the opinion sending it back. How do we say that the very deferential standard of review permits this? Sure, and may I have permission to answer the question? In this particular case, the standard of review, the information that was put there has to be material. We would ask that to state that no analysis of whether he had knowledge was ever done, that a strict liability was applied in this particular case because the judge- What's your argument that he has no knowledge? In other words, this recent data, the recent evidence to reopen seems to me to be totally irrelevant. So he says, I got this card that said you did not respond or it was returned. So if he didn't respond, he'd gotten earlier notices at the very same address and threw them in the trash, which is just as plausible. He didn't discount that. And so he gets a notice which shows that he's registered. What's that contribute to the fact finding? In his testimony when he was asked, have you ever received anything, he said no, he has not. So to whether someone threw it away, whether it got delivered to him or not- It's the same address. It is the same address. I noticed he came in in 1996. That's when I thought he'd come in. And he lived up in New Jersey, Elizabeth, New Jersey. He left for one year or so, went back to Brazil and came back. But he has lived in the United States since 1996. He has lived in the United States off and on with the visa. I thought his last entry into the United States was in 2005. It's not hard to contribute to my question because my question was related to his language. And so he'd been in the United States for a long time. The immigration judge said he was admitted in 1999. I'm sorry. May it please the Court, Sharon Clay on behalf of the government. The agency's- Can you pull the mic closer? Speak up if you would. The agency's denial of Mr. Sanchez's motion to reopen was not an abuse of discretion because the new evidence showing that he had not responded to the recent mailing or the fact that he had not voted does not persuasively show that he did not make a false claim of citizenship when you find the voter registration card. Just slow down and speak up a little bit. Okay. It would be helpful. Okay. As recognized by this Court, a person who signs a document certifying under penalty of perjury to the truth of its contents is presumed to know the contents of that particular document. Is there any evidence in the record regarding his ability to speak English at the time? He did not claim he did not understand English at the time. Right. But is there any evidence? Either way. No, not based on the record. Unfortunately, the petitioner did not appeal his decision to the Board of Immigration Appeals, and no transcript was created or generated. Do we know who typed in the information that appeared on this card? No, we do not know who typed in the information. So we don't know that he even typed in this information? No, we don't know if he typed it in. But I would argue that the fact that he didn't type in is a distinction without much of a difference. But it does contain contradictory information. It does, but it also gave him a warning for consequences of signing a document knowing that the contents are false. I guess, Ms. Clay, what I'm concerned about here is that there's a document where he says, I will be 18 years of age before the election, and then another part of the document says, I won't. And it signs it. Clearly, something is going on here. True. Something is wrong. True. So what's your explanation for that? Well, if I was Mr. Sanchez, knowing that presumably both of those items was wrong, I wouldn't have signed my name at the bottom of the document certifying that both of those items were true. Can you confirm one way or the other whether in 2007 a North Carolina driver's license was available to an undocumented person? From my research, no, it was not to undocumented aliens. It was not available? It was not available. There was an affirmative prohibition under state law? I saw evidence that showed it in 2013, I think. But we're talking about 2007. Yeah, no, I didn't see anything for 2007. I didn't see anything at all. So you don't know the answer to the question? No, not for certain. Just that they had this new thing about undocumented aliens getting licenses until 2013. What happened in 2013? I had seen some articles showing North Carolina allowing undocumented aliens to get driver's license, but it appears that it didn't occur or they didn't start doing it until some bill was passed in 2013. I'm sorry, a bill prohibiting or a bill authorizing? Authorizing undocumented aliens to drive, and that was in 2013. I couldn't find anything on 2007. Ms. Clay, what do you make of that passage in the IJ's opinion that I read to your opposing counsel, saying that the respondent and his wife testified credibly, but his explanation was implausible regarding signing the form. Nonetheless, they testified credibly. What does that all mean? It means that the petitioner generally testified credibly, but the immigration judge did have problems with his claim that he did not know he signed the document back in 2007. Well, yeah, but that goes right to the heart of it, and that's what this whole thing is about. Correct. How could you find that he testified credibly if you didn't accept his argument or his position that he couldn't recall signing the form? I mean, how could you find him credible? I mean, that goes to the absolute heart of the case, doesn't it? I agree that maybe the immigration judge should have found him adversely credible, but I don't think it's inconsistent with jurisprudence that the immigration judge could still find an individual credible but still have questions about a certain part of the person's testimony. Right, but if that part is the most material part. Yes, that is true. It is the most material part. If he finds that he was lying about the one thing that makes all the difference in the case, but says nevertheless he's credible, do we need to ask him to clarify that? Well, the immigration judge went on to look at the merits of the evidence that was presented before it. So although he may not have made a decision and told him about his credibility at that time, when he took totality of all the evidence in the record, including the fact that he made no complaint about not being able to speak English, there was no coercion by anybody. The person at DMV didn't tell him he needed to sign this. He has not challenged the correctness of the address in the record. The board confirms that there were additional communications mailed to him back in 2011 and 2012, and a reasonable person would not believe that those communications were related to the communication that he submitted to support his claim on motion to reopen. And the fact that the petitioner signed this particular voter registration card knowing that he was not a citizen of the United States, you know, under penalty of perjury, being warned that there were consequences of having committed a Class A felony, that he had to know at the time that he signed the registration form under penalty of perjury that he did make a false claim of citizenship. We've all three been trial judges. Yes. And so we all understand the human reluctance to say to somebody or about somebody, I don't believe you, to say nothing of, you're lying. There's a natural human reluctance to do that. But for us to review this, I mean, Judge Keenan's question is getting to, as she said, the heart of the matter. If this immigration judge reviewed this twice, he reviewed it twice. Very carefully. Right. He ought to have the courage, and maybe we should require him to demonstrate the courage, if that's what it is, to say on the record, in writing, in his opinion, you lied about this. I don't believe you. That's all he has to say, right? True. That's true. I don't believe you. I believe you did know that you were signing. Now, that raises all kinds of questions because of the form and he never voted. I mean, the fact that he never voted is circumstantial evidence that he didn't knowingly register. It doesn't conclusively decide anything. Correct. And his wife says she did vote. She was registered. And there's no indication, no cross-examination of her about this mailing, these mailings that came in. I mean, in other words, the record is a little messy. Yes. Because when you're reluctant to say to a witness or a party, I don't believe you, you kind of leave the record a little messy for purposes of review. True. But the immigration judge, under the guidelines for Motions to Reopen, when he's presented with two plausible alternatives for review, let's say that circumstantial evidence that he did, in fact, not know, and then there's evidence that he signed his card that says he did know. Immigration judges are allowed to look at the evidence. But they're required to make clear findings. Otherwise, we can't review it. Well, he can make reasonable inferences about some of the findings. But he's got to put in his order his finding. Well, he said he found conclusively that him certifying under penalty of perjury that he is a U.S. citizen was sufficient to show that he had made the false claim. But he didn't say, I find that he knew. Obviously, if you sign something while in a state of Catatonia, that doesn't satisfy the statute, right?  You have to know what you're signing. So you agree there's a difference between knowing that you've signed something and knowing what you've signed. Correct. Petitioner has refuted his claim under Section 1182-860-I of the statute. 1186-I is not the admissibility statute that his petitioner was held inadmissible under. He was actually charged as inadmissible under 1182-860-I. Under that particular provision, the plain language of the statute doesn't require knowingly overruling. What does it require then? Are you saying if you negligently signed it, you've committed a felony? It requires the false claim. Well, what if I just sign everything that has a signature line? I want to get out of there. I'm late to go back to work. And so I see all these signature lines, and I sign them. I know I'm signing them, but I don't have a clue as to what I signed. You're saying that's enough for a felony? Well, based on the application, the voter application, it clearly is. I mean, if it's warning you and you don't do it, if you don't. So you're saying you don't have to know what you signed? You only have to put your signature on the page, and you've committed a felony? No, you're presumed to know if you're signing under penalty of perjury. Well, what says about it that you're presumed to know? What in the statute contains that presumption? I didn't see anything there. No, not specifically in the statute. The statute itself only just says that it's a false claim of citizenship and that you derive a benefit from that false claim and that it has to be under state law, federal law, or an immigration benefit. We do have a principle that when people sign documents, especially documents under the penalties of perjury, they're held accountable for that document, and their deniability we don't accept. Correct. People sell millions and millions of dollars of real estate by corporations and so forth. Correct. Under those circumstances, and we have to be able to count on the fact that they're held accountable for what they sign, especially when they're warned. Correct. And that's true for contracts. So is your argument that even if we send it back, the IJ in this case would be prohibited from ruling in petitioner's favor? No, I'm not saying he wouldn't be. Well, wait a minute. How can that be? I didn't say he wouldn't be prohibited. If the IJ could permissibly rule contrary to the way he in fact ruled, then I'm not sure I understand the answer that no matter what, once he acknowledged that's his signature, end of case. I thought that's what you were just suggesting. And he did acknowledge that it was his signature. Right. And so he doesn't deny that it's not a forgery. So is the government saying end of case? Well, the government has the discretion to make that determination. I'm sorry. The government has. The government, not the IJ. The IJ. Well, the IJ. The IJ can look at this case and say, you know what? It's plausible that he didn't know. It's plausible that he did know. But under either one of those circumstances, whatever decision the immigration judge actually makes, you can't necessarily find clear error because there are two plausible alternatives. How do you think we're reviewing that decision? I thought that decision was unappealed. Right. And you're not going to review it. That's unreviewable because he didn't appeal that decision. But you're leaving out one of the important facts on that knowing business, too. Someone, if it weren't him but it was his signature, declared that he was born in New Jersey. That's an affirmative statement of fact. Correct. And it seems to me that that supports enormously any conclusion that he signed it and made a false statement. But to get back to my procedural question, I didn't think that that's reviewable. Any of this is. It's not. In the sense of getting back to the strict liability issue. Could you just stick with my procedural question? Oh, I'm sorry. That was a finding of fact and it was unappealed, right? Yes, that was a finding of fact. And he did not appeal it, which means it's not. So he's now under a procedural status of trying to reopen based on a mailing that he recently got. Correct. And we're arguing that mailing has nothing to do with his false claim. Whether he signed or not signed. Correct. It has nothing to do with that. Now, does the mailing have anything to do with his knowledge? Again, the knowledge issue is not relevant. The Board has taken a look at issues where there were voter registration, false claims made on voter registration. I thought knowledge was what this was all about. Okay, he's making that. He's making it. Right, as it relates to materiality. The case law that has come down on this issue on voter registration, on false claims made on voter registration, is that knowledge and willfulness is not necessary. The Board has taken a look at several of these types of cases and has actually decided that intent was not relevant or material. The Fifth Circuit has also taken a look at false claims under voter registration applications. And it, too, has conceded that it doesn't have to be made knowingly or willingly. In fact, in a case in 2011, I think it's Algalor v. Holder, the Fifth Circuit applying Skidmore deference to a voter registration application found that the absence of a warning on the application also was immaterial because it didn't have to be made knowingly or willingly. The fact that he derived some kind of benefit from signing that particular application under penalty of perjury was sufficient to find a false claim of citizenship. And there's some support for that position when you look at the reason why Congress actually instituted that provision. It's not even a counterpart. C-2, C-I-I, doesn't have the language that C-I has in it. C-I actually prohibits false representations generally. It doesn't matter what the false claim is, but it also gives you an opportunity to waive that false claim. In C-I-I, when they instituted this one, the Congress actually had a concern about non-citizens acquiring benefits that citizens are rightly reserved to have. And so they actually added this particular provision in 1996 during the IRIRA. And to that extent, the way the courts have been interpreting it, the way I see the board and the Fifth Circuit, that it sort of is a strict liability sort of provision in the statute. How does the scienter requirement for this immigration provision differ, if at all, from the scienter requirement in a criminal case, from a general intent crime in a criminal case? Not a specific intent crime, but a general intent crime. How is the scienter requirement different under the statute that we're dealing with here? Under the criminal statute. Or is it the same? Under the criminal, I think they do require knowledge. I mean, it has to be sort of known. It has to be a mens rea. Yes. Okay. And you're saying there can be a total absence of knowledge of what you're signing? Correct. As long as you put your signature on it. That's your position. Well, not necessarily mine. I'm just going by the board. For example, the board in reviewing a voter registration, they have found people admissible where the card was used for identification purposes only. They didn't intend to vote. They just filed a voter registration card so they could use it to apply for adjustment status on another application. The board also said that a person who reasonably believed they were a citizen was guilty of a false claim under the same rubric. Okay, but let's take it back to this case, though, to help me understand, if you would. So what if Mr. Sanchez had said, I don't really understand English very well, to the person who was helping him fill out this. If somebody was helping him, we don't even know. What if he had made it known that he did not have a very good command of the English language? And if he signed it anyway, would he meet the scienter requirement of the statute? I don't really understand English very well, but he signed it anyway. Has he violated the statute under little too I? Well, he does violate it because he makes a false claim. Okay, so even if he says, I don't read and write English, the fact that he signed it. It is a defense to the claim. And if the immigration judge took that into account, he might give it to you. But I'm asking you the law, not what the immigration judge said. The board has decided that it doesn't matter. Excuse me, just one sec. I'm asking you under section 1182A6C2I, falsely claiming citizenship. So not the one above it that talks about fraud or willful misrepresentation, but just the one that says any alien who falsely represents. So if he goes up to the counter and says, I can't really read and write English, and they start talking to him and he signs the form, you're saying he's violated the statute? Yes. The board in 2013 actually had a petitioner that came before them on a voter registration application and said she spoke and read English poorly at the time she registered to vote and only realized that she had registered when she was criminally charged and asserts that she had not voted and that was her defense to the false claim and the board still found that she had made a false claim of citizenship. Are we reviewing this at all? You know, you don't keep us focused on this, but the question is whether this document that was mailed recently to him or his address by the board that said you didn't respond, whether this proves that he didn't have knowledge back at that time. I mean, we're talking about a guy that had been in the United States 11 years when he signed that. Correct, and that's true. This court is to decide whether or not his not voting. We're deciding not even deciding that. We're deciding whether the board abused his discretion based on this little document that came recently. And we're arguing that. And he's got to eliminate all the possibilities to show that this document, four years later, reflects on his knowledge. But it's really the board saying we didn't hear from you. Correct. You did not appeal your decision about your knowledge or knowing. And those issues were raised before. He just didn't have evidence to demonstrate that. So they had taken these issues in consideration below in the underlying decision, and he's presenting evidence that essentially is just cumulative of what he tried to argue without evidence below, that he did not have knowledge. And they didn't agree with it then, and they didn't agree with it on his motion. Well, you can say he didn't have knowledge now, but that's irrelevant. Right, it doesn't. He had a chance to try that case. He lost. He didn't appeal. He didn't appeal. And there was a factual finding against him, and we're not reviewing that. Correct. What we're reviewing is whether he has provided new evidence, and the board said that was insufficient, and now we have to say that was an abuse of discretion. And it's not an abuse of discretion. No, not to reopen. No, it's not an abuse of discretion. Somebody not responding to a mail doesn't show that he has not received mail. He probably received the envelope that the response is referring to, but there's no evidence indicating that. So upon reviewing the evidence that he didn't vote or that he didn't respond to something, that doesn't get you to the place where you knew you made a false claim. Can you explain to me, as I read the record, formally there was a denial of the motion to reopen, and as Judge Niemeyer says, formally, technically, that's what's before us. Yes. But it's not clear to me what this record would look like any differently if, in fact, the motion to reopen had been granted and then there was an appeal. In other words, from what I can tell, both the IJ and the Board considered the motion to reopen on the merits. They explained. Yes, they did. They considered all the quote, unquote, new evidence. Without determining whether or not the evidence was new or whatever. Exactly. So, again, messy records result in messy reviews. What's going on here? What's before us? Is it actually the denial of a motion to reopen, or is it de facto the grant of a motion to reopen and an adverse determination on the new evidence, concluding that it's not material? I think it may have been an immigration judge that was bending over backwards to try to show that he was being sympathetic to the material. You're credible, but you're going to be removed from the schedule. He's been here for a long period of time. He has children here in the United States. But at the end of the day, I honestly believe that you made a false claim of citizenship that renders you inadmissible in the United States. And the new evidence that you have submitted does not change that. Okay, fair enough. Thank you. All right, Mr. Calderon. Thank you, Your Honor. Just a few points. First on the issue of strict liability as it relates. If Congress had intended this to be strict liability, they could have stated it. They did this. In 1182A10D, they state it. They say anyone who votes in an election against the laws is inadmissible. It's not who falsely voted. It's not misrepresented in order to vote. It's strict liability. Anyone who votes. The one in A6C2, we keep using the word false claim. That is not the plain language. False claim is a noun. That is something that's false. It is anyone who falsely represented in order to obtain a benefit. And that's what we're arguing. There had to be knowledge in this particular case. And we're stating that this new evidence goes to the very heart of that. It goes to the issue, did he have knowledge. One, it shows that he didn't vote because that was part of the record that we pulled. He didn't vote. It also shows that he did not receive or mail was returned. We keep saying he received it. The actual information says that the mail could have been returned to the Board of Elections, which also. He has the burden of proving that. It also says he didn't respond. Sure, and that's why I think it's. You have to take the facts. In other words, you're trying to say that there's new evidence about his knowledge at the time he signed the DMV form. Yes, sir. And this has nothing to do with that knowledge. It's a five-year, four-year later statement that he got something from the board that says you didn't respond. He says, ergo, proves I didn't have knowledge when I signed. It's unrelated. And I believe that when you look in the context of he was found to be credible by the immigration judge and he said, I did not register to vote. You now take this new evidence in context with those two. That's irrelevant. I keep telling you we can't review that. He didn't appeal that. There was a factual fine. Sure. Worked on a motion to reopen based on this mailing from the North Carolina Election Board. And he got this mailing at his address that he had given all the way back then. And he says, that proves I didn't have knowledge when I signed. Now, tell me how you make that nexus. In that he claims that he did not have knowledge and so not receiving those. That was decided back then. The question is whether this document changes his knowledge. All it is is a mailing from the board. He's on the records of the board. And he says, I never got this. Sure. And what we would argue is that these documents do go to what he knew in 2007. Because he's saying, see, I didn't know these things. Well, the I.C. knew, though, at the initial hearing that he didn't vote. He said he didn't vote at the initial hearing. So that wasn't new evidence. And the other thing that we haven't really discussed here is this is a timely recant. In that as soon as he got this letter from the Board of Elections, he went down there and removed himself from the voter registration. He had already been to court then. He had already been to court. But what we are stating is that he did not have knowledge. When he went to court, that's the first time he had knowledge of any type of voter registration. So this evidence could go to, did he timely retract? And that was not even addressed. It doesn't reflect on his knowledge back in 2007 at all. That is a factual finding that we're stuck with. And it seems to me that the focus on what the statute says and how it was applied then is irrelevant. The question is whether this new evidence is material. And then if it is material, whether the board abused its discretion in not reopening on that basis. Sure. And we would argue that it is. And we'd argue that if. You can make the argument. I just am failing to see the connection at all. Well, one is that the immigration judge did not do an analysis as to whether it's material. He basically said, you signed the card under penalty of perjury. Therefore, you claim to be a United States citizen. And it did not even address whether this is material, whether he did timely recant any claim to be a U.S. citizen. But again, and now I'm using the term, I want to make it clear that it needs to be, it should have been analyzed by the immigration judge and by the Board of Immigration Appeals, as that it was a falsely represented statement in order to obtain a benefit. And I don't think this analysis was done in either the motion to reopen or the denial by the board. Are you exploring an ineffective assistance claim here? We are exploring that. The prior attorney is no longer practicing in the state of North Carolina, and so we are looking to that. I'm surprised to hear that. Thank you, Your Honor. All right. We'll come down and greet counsel and proceed on to the next case.
judges: Paul V. Niemeyer, Barbara Milano Keenan, Andre M. Davis